UNIVERSITY CHEVROLET COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27672.   Promulgated June 29, 1951.

*Frederic D Dassori, Esq.,* for the petitioner.

*William W. Oliver, Esq.,* and *Ralph B. Bradbury, Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The petitioner has claimed a deduction of $27,655.73 under section 23 (a) (1) (A) of the Internal Revenue Code which allows a deduction "including a reasonable allowance for salaries or other compensation for personal services actually rendered." The determination of the Commissioner that a reasonable allowance for compensation of Davis was $14,643.24, and not more, is presumed to be correct until evidence is introduced showing that a reasonable allowance is a larger amount.

Counsel for the petitioner takes the position that the salary and bonus computed for 1946 under the incentive contract in effect before Davis became sole owner of the stock must necessarily result in a reasonable allowance to be deducted under section 23 (a) (1) (A) even after Davis became sole owner of the stock. There are obvious weaknesses, however, in any such theory. The original contract between the General Motors subsidiary and Davis was an arm's length

transaction from which each side hoped to benefit. General Motors adopted the method in order to give an incentive to men of promising ability, even though without sufficient funds, to undertake the operation of outlets which they were expected to build up and eventually own. General Motors furnished the original capital, but under the plan, if successful, it would recoup that capital and meanwhile receive dividends. It could well afford to allow a large part of the earnings to go to the manager as a salary bonus in order to obtain a man who would build up a profitable business at the location and buy the stock of the corporation, all at no ultimate cost but with great benefit to General Motors. However, it does not follow that such a contract would be entered into at arm's length under different circumstances. The circumstances differed vitally once Davis became sole owner of the petitioner corporation. For a sole owner to pay himself a bonus as an incentive to do his best in managing his own business is nonsense. The G. M. plan was successfully completed when Davis became the sole owner of the stock in 1944. Thereafter, any contract between him and the corporation would not be a contract at arm's length between two persons with different interests, each dealing for his own best interest. Davis was then in position to fix his compensation as he saw fit, but the petitioner could claim as a deduction no more than a reasonable allowance for compensation for his services as manager, no matter what it agreed to pay. Thus, the petitioner benefits little, if any, from the incentive contract in meeting its burden of proof.

Davis was in position to pay himself whatever salary he chose, and any amount which he paid himself over and above reasonable compensation would represent the distribution of a dividend to the sole stockholder. His compensation requires careful scrutiny. The relationship of his compensation to net income, to capital, to compensation of others, and to other significant figures has been studied. The dividend record has been observed. Opinion evidence and evidence of salaries paid elsewhere have been carefully considered. Salaries paid Davis in earlier years have also been considered. There is some evidence to indicate that a reasonable allowance for 1946 should exceed the amount of a reasonable allowance for 1945, but there is also evidence that the services performed in 1946 were less than those performed in 1945. The Court has considered all of the evidence in the case and has come to the conclusion that that evidence does not fairly preponderate in favor of a holding that a reasonable allowance for compensation for personal services of Davis for 1946 is in excess of the amount determined and allowed by the Commissioner.

*Decision will be entered for the respondent.*